IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

STATE OF WISCONSIN LOCAL
GOVERNMENT PROPERTY
INSURANCE FUND and THE
TRAVELERS INDEMNITY COMPANY

    Plaintiffs,

v.

CH2M HILL, INC., a foreign corporation,

    Defendant.                                              Case No. 02-C-302-DRH

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION

Now before the Court is defendant CH2M Hill, Inc.'s Motions *In Limine* (Doc. 124), and Defendant's Motion to Strike the November 21, 2005 Addendum to Plaintiffs' Expert Report. (Doc. 134.) In its Motions *In Limine*, Defendant moves the Court for the following orders:

1. barring Plaintiffs' expert from testifying that the explosion would have occurred if the discharge slide gate had been closed;

2. barring Plaintiffs' expert from testifying to alternative designs for the sludge dryer;

3. limiting Plaintiffs' expert to the opinions expressed in his report and in his deposition;

4. barring testimony or argument that CH2M HILL failed to properly train MMSD dryer operators;

5. barring Michael Simmons from testifying live at trial;

6. barring Plaintiffs from presenting Simmons' deposition testimony concerning his injuries; and

7. barring Plaintiffs from presenting any evidence or making any reference to Simmons' injuries, his lawsuit, or his settlement.

Essentially, a large portion of Defendant's Motions *In Limine* make a second attempt at a *Daubert*[1] motion, previously filed by Defendant in this case, seeking to bar Plaintiffs' expert, Andrew Dickens, from testifying at trial. (*See* Doc. 78.) The Court[2] denied Defendant's *Daubert* motion, for the underlying reason that Defendant failed to provide a basis to exclude all of Dickens' testimony. (Doc. 117.) Namely, Defendant failed to claim or demonstrate through its arguments that all of

---

[1] ***Daubert*** requires that a district court ensure admitted scientific evidence is reliable (pursuant to Federal Rule of Evidence 702) and also relevant to the trier of fact (pursuant to Federal Rule of Evidence 402). ***Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)**. In short, scientific evidence is reliable if it is "well-grounded in methods and procedures of science." ***Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)(citing *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 536 (7th Cir. 2000))**. As such, the focus must be on the theory, principles and methodology of the evidence or scientific testimony, and not merely the conclusions generated. ***Id.* (citing *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996))**. ***Daubert*** set out a nonexclusive list of factors or guidelines for a district court to consider when analyzing the reliability of scientific evidence: (1) whether the theory can be and has been verified by the scientific method through testing; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error; and (4) the general acceptance of the theory in the scientific community. ***Cummins*, 93 F.3d at 368.**

The test under ***Daubert*** is flexible, and there is "no requirement that an expert's testimony satisfy each of the listed factors." ***Chapman*, 297 F.3d at 687.** Considering whether such evidence is relevant, it is crucial that the expert "'testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury.'" ***Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001)(citing *Ancho v. Penteck Corp.*, 157 F.3d 512, 519 (7th Cir. 1998))**. A district court, therefore, plays the role of "gatekeeper" when determining whether to allow scientific evidence and/or expert testimony to be admitted at trial. ***Cummins*, 93 F.3d at 370.**

[2] At the time, United States District Judge J. P. Stadtmueller was presiding over this case. However, it should be noted that on or about July 5, 2005, this case was reassigned to United States District Judge David R. Herndon.

Dickens' opinions were either unreliable or irrelevant, which is the standard required under *Daubert*. (*Id.* at 6.) However, after stating that it was denying Defendant's motion, the Court endeavored to further address some of Defendant's specific arguments to offer the parties some guidance on the admissibility of Dickens' testimony. (*Id.* at 6-18.)

Also before the Court is Defendant's Motion to Strike the November 21, 2005 Addendum to Plaintiffs' Expert Report. (Doc. 134.) Defendant seeks to strike the addendum to Dickens' expert report, as Plaintiffs submitted it "just three weeks before trial of this matter" (Doc. 134, p. 1) as an exhibit in their Response to Defendant's Motions *In Limine*. (Doc. 131-3, Ex. D.) Plaintiffs have filed a Response opposing Defendant's Motion to Strike. (Doc. 136.)

For reasons further discussed, the Court hereby **GRANTS IN PART, DENIES IN PART, FINDS AS MOOT IN PART** and **DEFERS RULING IN PART** Defendant's Motions *In Limine*. (Doc. 124.) Additionally, the Court **GRANTS** Defendant's Motion to Strike. (Doc. 134.)

## II. BACKGROUND FACTS

At this juncture, the Court will minimally provide the necessary background details of this case to supply an adequate factual backdrop to substantiate the legal evidentiary issues examined herein.[3] On February 20, 1996, there was an explosion (the "1996 Explosion") at the Milwaukee Metropolitan

---

[3] For a more thorough factual recitation, please refer to Case No. 02-C-302, Doc. 117, and also the parties' pretrial reports, Docs. 128 & 129.

Sewerage District's ("MMSD") Jones Island Dewatering & Drying Facility (the "D&D Facility"), located in Milwaukee, Wisconsin. (Doc. 124, p. 2.) The property damages allegedly caused by this explosion are now the subject matter of this lawsuit. It appears that the 1996 Explosion at the D&D Facility may have occurred in one of its dryers used to process waste water sewage sludge into Milorganite, which can then be used as a commercial fertilizer. (Doc. 117, pp. 1-2.) The D&D Facility was designed by defendant CH2M Hill, Inc. at the direction of MMSD. (Doc. 124, p. 2.)

The resulting property damage was allegedly in excess of $2.4 million. MMSD insured its D&D Facility with plaintiff State of Wisconsin Local Property Insurance Fund (the "Fund"), which, in turn, reinsured this coverage with plaintiff The Travelers Indemnity Company ("Travelers") (collectively "Plaintiffs"). (Doc. 117, p. 2.) Plaintiffs originally filed this lawsuit in Milwaukee Circuit Court, alleging claims of breach of contract, negligence and product liability. (*Id*.) Defendant removed Plaintiffs' lawsuit to federal court upon the basis of federal diversity jurisdiction. (*Id*.; *see also* Doc. 1.) Because the Court had previously granted a motion for summary judgment filed by Defendant, with respect to Plaintiffs' breach of contract and product liability claims, the sole remaining claims in this case are Plaintiffs' negligence claims – specifically that Defendant negligently failed to design the D&D Facility and negligently failed to implement safeguards and remedial measures that were suggested by an outside engineering firm following a flash fire and explosion that occurred prior to the 1996 Explosion. (Doc. 117, pp. 2-3.)

## III. ANALYSIS

1. **Defendant Moves *in Limine* to Bar Plaintiffs' Expert from Testifying that the Explosion Would Have Occurred if the Discharge Slide Gate Had Been Closed**

In its Motion, Defendant first moves *in limine* to bar Plaintiffs' expert witness, Andrew Dickens, from testifying that the 1996 Explosion would have occurred even if the discharge slide gate[4] was closed at the time, calling this testimony "speculative," because Dickens apparently neither performed nor reviewed any calculations, testing or analyses to support his conclusion. (*Id*. at 5.) Similarly, Defendant requests to exclude Dickens' testimony that the dryer was defective because it allowed "any" accumulation of dried material. (*Id*. at 4-6.) Plaintiffs counter in their Response that Defendant misstates Dickens' opinion. Plaintiffs explain that Dickens did not state that the explosion *would* have occurred if the discharge slide gate had been closed. (Doc. 131, pp. 2-4.) Instead, Plaintiffs assert that Dickens opined that the 1996 Explosion *could* have occurred even if the gate had been closed. (*See* Deposition of Andrew Dickens, p. 304 - *filed as* Doc. 131-3, Ex. C.)

Plaintiffs further argue that hands-on testing is not a prerequisite for the

---

[4] In order to produce Milorganite, waste water residual materials must pass through large cylindrical dryers. (Doc. 124, p. 2.) The material then leaves the dryers and enters the dryer discharge hood. (Doc. 128, p. 3.) From the discharge hood, the materials can either proceed into the discharge screw, where it is ultimately conveyed into storage bins or it can go into the add-back screw which then recirculates the materials back into the dryer, when the dryer is operating on "add-back mode." (*Id*.) In order to place a dryer in add-back mode, the dryer operator closes the "**discharge slide gate**." (Doc. 124, p. 2.) If the discharge slide gate is not closed during add-back mode, hot material will accumulate between the discharge slide gate and the discharge screw until the screw conveyer is turned back on. (*Id*.) The accumulated material has the propensity to self-heat, creating a risk of a potential explosion if exposed to air. (*Id*.; *see also* Doc. 128, pp. 1-2, 4-5.)

admission of expert testimony. Instead, Plaintiffs believe that Dickens' own experience, coupled with his review of outside scientific analyses (of which, Plaintiffs claim, include Defendant's own expert), adequately support his particular conclusion. (*See* Dickens' initial Report, p. 8 – *filed as* Doc. 131-2, Ex. B.) Basically, Plaintiffs explain that Dickens expressed that there was a ***risk*** the explosion could still have occurred with the discharge slide gate closed, due to the self-heating of the sewage sludge, and this fact is supported by his own experience and the work done by Defendant's expert. (*Id.*)

In reviewing the merits of Defendant's first Motion *In Limine* argument, it appears it is mostly a rehashing of Defendant's prior *Daubert* motion (Doc. 78), which was addressed in the Court's Order of February 28, 2005. (Doc. 117.) In that Order, Judge Stadtmueller previously deemed Dickens "qualified to offer reliable testimony regarding the design of the dryers and preventative measures relating to fire and explosion hazards." (*Id.* at 8.) Additionally, Judge Stadtmueller found that "the methodology underlying Dickens' opinions regarding the cause of the February 1996 [E]xplosion and design of the dryer discharge hood is reliable." (*Id.* at 9.) However, the Court *did* note that "Dickens appears to <u>speculate</u> that the explosion would have occurred even if the discharge gate had been closed," and further stated, "Dickens must clarify the theory and methodology underlying his opinions before the court will allow [him] to state them at trial." (*Id.* at 17.) (Emphasis added.)

Plaintiffs, in their Response to Defendant's Motions *In Limine*, attempt to submit a supplemental report (entitled "Addendum to Expert Report"), attached

as Exhibit D, in order to further clarify Dickens' basis for his opinion that the 1996 Explosion could have occurred with the discharge gate closed. Dickens' Supplemental Report is dated November 16, 2005. (*See* Doc. 131-3, Ex. D.) According to Plaintiffs, Dickens' Supplemental Report shows the errors in conclusions reached by some of Defendant's experts (conclusions based in part upon calculations which were allegedly not available to Dickens at the time of his deposition), as well as specifically describes the tests reviewed by Dickens to support his expert opinion. (*Id.* at 5-6.)

While noting Plaintiffs' assertions that Dickens' Supplemental Report does not contain any new theories or opinions (with the exception of some new criticisms of Defendant's experts), the Court finds Defendant's arguments to strike this supplemental report to be prevailing. **Federal Rule of Civil Procedure 26(e)** allows a party to supplement any evidentiary disclosures when new or additional information has become available, or to correct any previous errors. Therefore, while **Rule 26(e)** imposes a duty to supplement, it does not grant parties the *right* to essentially extend discovery deadlines. ***See Salgado v. General Motors Corp.* 150 F.3d 735, 742 n.6 (7th Cir. 1998)(citing *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir.1996))**. Further, **Rule 26(e)(1)** requires that supplemental expert reports be timely submitted in accordance with **Rule 26(a)(3)**, which mandates that unless otherwise directed by the court, supplemental disclosures be made at least 30 days before trial. Supporting this notion, **Federal**

**Rule of Civil Procedure 37(c)(1)** provides that a party failing to disclose supplemental information pursuant to **Rule 26(e)(1)** without a showing of substantial justification shall not be permitted to use such evidence at trial, unless the Court deems such evidence as "harmless."

Plaintiffs initially submitted Dickens' Supplemental Report on November 21, 2005, upon filing their Response to Defendant's Motions *In Limine*. This was well after the August 31, 2004, discovery deadline and less than 30 days before the December 12, 2005, trial date scheduled in this case.[5] In fact, this was subsequent to the filing of Plaintiffs' Pretrial Report on November 18, 2005. It was also *well* after Judge Stadtmueller's Order of February 28, 2005 (Doc. 117), which Plaintiffs claim "clearly invited" them to submit Dickens' Supplemental Report.[6] Moreover, Plaintiffs did not so much as display the procedural courtesy of filing for an extension of the discovery deadlines or moving for leave to file Dickens' Supplemental Report outside of the discovery period.

In sum, Plaintiffs have failed to demonstrate why their eleventh hour attempt to supplement Dickens' initial Report is substantially justified. As such, the Court hereby **GRANTS** Defendant's Motion to Strike (Doc. 134). Accordingly, Plaintiffs are barred from introducing into evidence Dickens' Supplemental Report, dated November 16, 2005, and previously submitted as Exhibit D to Plaintiffs'

---

[5] This trial date was set by the Court on September 16, 2005. (Doc. 122.)

[6] The Court is confident in its belief that even if Plaintiffs correctly assumed that Judge Stadtmueller's opinion had "clearly invited" a supplemental report, he *certainly* did not express an opinion that it should be submitted by Plaintiffs on nearly the eve of trial.

Response in Opposition to Defendant's Motions *In Limine* (Doc. 131), and the evidence contained therein.

Remaining, however, as part of Defendant's first argument in its Motions *In Limine*, is whether Dickens should be barred from testifying to his opinion that the 1996 Explosion would have occurred had the discharge gate been closed. As the Court finds that Judge Stadtmueller had previously found Dickens to be a qualified expert in the field regarding the subject matter of his testimony, and his methodology regarding the cause of the 1996 Explosion and design of the dryer discharge hood to be reliable, he may opine regarding the possibility of whether an explosion *could* have occurred even if the discharge gate had been closed. However, to clarify – Dickens may not affirmatively state that such an occurrence *would* have happened. He may only testify as he previously opined, based on his expert opinion and given hypothetical conditions, about whether this explosion *could* have happened. This will allow Defendant the opportunity during cross-examination to explore the basis of his opinion, that which was timely disclosed, and the jury can accord it the weight it believes that it deserves. As such, Defendant's Motion *In Limine* with respect to its first argument is hereby **DENIED**.

2.  **Defendant Moves *in Limine* to Bar Plaintiffs' Expert from Testifying About Alternative Designs for the Sludge Dryer**

Defendant, for the second argument in its Motion, next moves *in limine* to bar Dickens from testifying regarding what Defendant calls "alternative designs,"

which may have been implemented at the D&D Facility.[7] In his report and during his deposition, Dickens offers up six "strategies" for incorporating "explosion prevention" and "explosion protection" into the design of the equipment of the D&D Facility. Defendant contests admitting this testimony because it argumentatively "lack[s] any reliable scientific basis." (Doc. 124, p. 7.) Defendant further argues that Dickens failed to perform any testing, analyses or calculations to determine whether any of his proposed strategies were feasible, reliable or cost effective, and did not evaluate how the integration of any of the alternative designs may impact the quality, quantity, or cost of producing Milorganite at the D&D Facility. (*Id*.)

The Seventh Circuit recognizes the "importance of testing in alternative design cases." ***Cummins v. Lyle Industries***, 93 F.3d 362, 368 (7th Cir. 1996). However, testing is not an "absolute prerequisite." ***Id*. at 369 (noting that consistent with Federal Rule of Evidence 702, expert reliability can be based upon review of experimental, statistical or other scientific data generated by others in the field**).

***Cummins*** suggests that if an expert testifies not merely that alternative design exists, but that the alternative design *ought to have been incorporated* into the equipment at issue, then the expert must have taken into consideration such factors as: degree of alternative design's compatibility with existing equipment, efficiency, short and long-term maintenance costs, ability to maintain and service the

---

[7] Differing in opinion as to what Dickens' expert testimony is intended to offer in this regard, Defendant chooses to label these "strategies" as "alternative designs." (*See* Doc. 124, p. 7.)

alternative design, relative cost of installation and effect on overall costs and operations. **Cummins, 93 F.3d at 369**. Further, these considerations are usually not reliably determined without testing. **Id.; see also Bourelle v. Crown Equip. Corp., 220 F.3d 532 (7th Cir. 2000)(affirming district court's ruling to exclude expert testimony that alternative design should have been implemented as part of defendant's equipment, when expert merely offered speculative conclusions, without testing or other reliable scientific support); Dhillon v. Crown Controls Corp., 269 F.3d 865 (7th Cir. 2001)(affirming exclusion of expert testimony that a proposed alternative design for a forklift would have prevented injury and defendant was negligent for not incorporating design – alternative design theory was not tested by expert nor did expert prepare model of alternative design, no lab or organization had tested his designs, no manufacturer had incorporated his alternative design, and no organization had approved of the alternative design)**.

Dickens lists six "strategies" as follows: (1) Avoidance of Explosive Atmospheres; (2) Elimination of Ignition Sources; (3) Explosion Containment; (4) Explosion Suppression; (5) Explosion Venting; and (6) Explosion Isolation.[8] (Doc. 131-2, Ex. B, p. 5.) The Court notes that Judge Stadtmueller found the first of Dickens' suggested "strategies" was a generally accepted, common industry practice

---

[8] In his initial Report, Dickens lists items nos. 1 and 2 as "explosion prevention" strategies, and items nos. 3 through 6 as "explosion protection" strategies. (Doc. 131-2, Ex. B, p. 5.)

Page 11 of 19

Case 1:02-cv-00302-DRH   Filed 12/06/05   Page 11 of 19   Document 137

in the industry, which had been previously subjected to scientific testing and peer review and therefore reliable. (Doc. 117, p. 15.) As the admissibility issue regarding this first strategy was previously determined, the Court finds that this becomes law of the case, and therefore **DENIES** Defendant's Motion *In Limine* to bar Dickens from testifying about the strategy "Avoidance of Explosive Atmospheres."

Judge Stadtmueller did not determine whether the other five strategies offered by Dickens were admissible, but did state in his Order that "Dickens candidly expresses concerns regarding the feasibility of some of the protective measures that he describes in his report; Dickens provides little or no analysis with respect to some of the protective measures . . . Dickens must clarify the theory and methodology underlying his opinions before the court will allow Dickens to state them at trial." (Doc. 117, pp. 16-17.) It would seem that in light of denying Dickens' Supplemental Report, Plaintiffs have not yet clarified any theory and/or methodology to support Dickens' opinions regarding the remaining five suggested strategies.

However, Dickens' initial Report states that these six strategies were "available to Defendant during the design of the new D&D facilities," and that they were "well established" and "in use by industry at the time . . . ." (Doc. 131-2, Ex. B, p. 8.) Dickens bolsters his statements by citing several standards issued by the National Fire Protection Association ("NFPA") relating to the prevention of fire and

dust explosion hazards.[9]

At this point, it is unclear if it is merely a matter of semantics or if a substantial legal consequence exists upon the determination of whether these remaining five strategies proffered by Dickens are really just "strategies/protective measures," as Defendant suggests or "alternative designs," as Plaintiffs suggest. Therefore, the Court finds that there is a basic dispute of fact about what the evidence will show, and therefore must **DEFER RULING** on Defendant's Motion *In Limine* regarding its second argument concerning the remaining five "strategies/alternative designs," until the time Plaintiffs seek to introduce this evidence during trial. However, under no circumstances will the Court allow speculation. Accordingly, if the technology suggested by Dickens is shown to have been unavailable at the time Dickens opines they could have been implemented at the D&D Facility, testimony and/or evidence regarding these five strategies/alternative designs will not be admitted. Similarly, if Dickens' opinion(s) are feasibly subject to testing and it is shown that this testing was not conducted, testimony and/or evidence regarding these five strategies/alternative designs will not be admitted.

### 3. Defendant Moves *in Limine* to Limit Plaintiffs' Expert to the Opinions Expressed in His Report and in His Deposition

Defendant, for the third argument in its Motion, moves *in limine* to limit Plaintiffs' Expert to the opinions expressed in his report and deposition. Defendant

---

[9] Dickens cites NFPA 654 "Prevention of Fire and Dust Explosions from the Manufacturing, Processing, and Handling of Combustible Particulate Solids," and also NFPA 68 & 69. (*See* Doc. 131-2, Ex. B. pp., 5-6.)

notes that Plaintiffs produced a handwritten list of material Dickens considered particularly significant in his review, but failed to produce any supplemental report or other document adding to or correcting any of the opinions or bases for opinions set forth in Dickens' initial March 31, 2004 Report and/or his deposition testimony (taken May 26, 2004). (Doc. 124, pp. 14-15; *see also* Reid Affidavit., Ex. C - *filed as* Doc. 125-2.) It appears from the copy of this handwritten list document, submitted as Ex. C to Plaintiffs' Response/Reid Affidavit, that it was sent via facsimile on May 25, 2004. Yet Defendant does not state when it received this list from Plaintiffs, so this would be the Court's speculation, at best. Defendant does not specifically address the testimony which it seeks to exclude and/or limit, nor does it explain why it would not have had the opportunity to question Dickens based upon this additional handwritten list, as it appears to be sent the day before the deposition[10] Plaintiffs state in their Response that they intend to present Dickens' testimony at trial "in full compliance with Rule 26(a)(2) . . . ." (Doc. 131, p. 8.)

   At this time, the Court only sees a basic dispute of fact as to whether Defendant was provided with Dickens' handwritten list in enough time to use during Dickens' deposition. If Defendant was not given this list in time for use at Dickens' deposition, the Court is presently uncertain of whether this caused Defendant actual harm. As such, the Court hereby **DEFERS RULING** on Defendant's Motion *In*

---

[10] Defendant does not address Dickens' Supplemental Report in this argument, as it was only subsequently submitted as part of Plaintiffs' Response. Defendant, thereby, filed its Motion to Strike the Supplemental Report, which the Court has granted in this Order, *supra*.

*Limine* regarding its third argument until such time Plaintiffs seek to introduce this evidence during trial. However, to the extent that such documents listed in the handwritten list are related to and/or substantiate Dickens' Supplemental Report and not his initial Report, the Court will likely find this list to be inadmissible under the evidentiary guidance of **Federal Rule of Civil Procedure 26**.

4. **Defendant Moves *in Limine* to Bar Testimony or Argument that CH2M Hill Failed to Properly Train MMSD Dryer Operators**

For its fourth argument, Defendant moves *in limine* to bar testimony that it failed to properly train the MMSD dryer operators. Defendant asserts that it had no legal duty to train the operators, according to Task Order No. 272 (Reid Aff., Ex. D - *filed as* Doc. 125-2), which states that Defendant had the responsibility to "develop procedure for training a core group of DISTRICT staff who will train shift operators and maintenance personnel." (Doc. 124, p. 16.) However, Plaintiffs counter that a later task order, Task Order No. 288, lists the responsibilities of engineer (defined as Defendant) under the category of "Systems Testing and Start Up" to "Prepare and deliver a training program to DISTRICT *operations* and maintenance personnel . . . (1) prepare draft training modules for ... (f) sludge drying." (Doc. 131, p. 8 and Ex. E - Doc. 131-3.)

Plaintiffs' evidence of Task Order No. 288 *does* seem to controvert Defendant's argument. However, there is an evidentiary problem as the copy of Task Order No. 288, submitted as Exhibit E to Plaintiffs' Response, is missing pages 8 and 9. The relevant provision cited by Plaintiffs also references Planning Memorandum

Page 15 of 19

Case 1:02-cv-00302-DRH   Filed 12/06/05   Page 15 of 19   Document 137

No. 2, prepared under Task Order No. 272 (cited by Defendant). This was not submitted, but may be helpful to the Court and jury.

It is apparent that a question of fact exists that should be left for the jury to decide. Therefore, Defendant's Motion *in Limine* with respect to its fourth argument is hereby **DENIED**.

**5. Defendant Moves *in Limine* to Bar Michael Simmons from Testifying Live at Trial**

Defendant, in its fifth argument of its Motion, moves *in limine* to bar Plaintiffs' witness, Michael Simmons, from testifying live at trial. In their Response, Plaintiffs assure the Court that it will not attempt to make its witness, Michael Simmons, testify in-person at trial, but rather will adhere to the previous agreement that Simmons' prior deposition testimony be read into the record. (Doc. 131, p. 9.) Therefore, the Court finds this argument in Defendant's Motion *in Limine* to be **MOOT**.

**6. Defendant Moves *in Limine* to Bar Plaintiffs from Presenting Michael Simmons' Deposition Testimony Concerning His Injuries**

For its sixth argument in its Motion, Defendant moves *in limine* to bar Plaintiffs from presenting Simmons' deposition testimony concerning injuries allegedly caused by the 1996 Explosion. Defendant objects to Plaintiffs reading into the record any part of Simmons' previous deposition testimony regarding his injuries allegedly caused by the 1996 Explosion, as being irrelevant and wholly prejudicial to the instant matter. (Doc. 124, p. 17.) To the contrary, the Court finds that the

facts surrounding Simmons' injuries, including the nature of his injuries, are relevant facts to this case – that being the nature of the 1996 Explosion, which essentially constitutes the underlying fact giving rise to the dispute at bar. Therefore, Defendant's Motion *in Limine* with respect to its sixth argument is hereby **DENIED**.

7. **Defendant Moves *in Limine* to Bar Plaintiffs from Presenting Any Evidence or Making Any Reference to Michael Simmons' Injuries, His Lawsuit, or His Settlement**

  For its final argument in its Motion, Defendant moves *in limine* to exclude evidence of Simmons' injuries, and also evidence that Simmons' had previously filed a lawsuit against Defendant regarding his injuries, which the parties thereafter settled. (Doc. 124, p. 18.) Defendant again argues that this evidence would be wholly prejudicial. The evidence is relevant for a couple of reasons. First of all, if his suit was against any party to this action and his testimony in the deposition that is to be read was given in that litigation, his potential bias is relevant for the jury's consideration. In addition, the facts of Simmons' injury are naturally the underlying facts of this case and the "who, what, where and how" of his injuries are, therefore, relevant to this action. However, the fact that his lawsuit was subsequently settled and the amount of that settlement is not relevant the instant case and will not be admitted. As such, Defendant's Motion *in Limine* in respect to its seventh and final argument raised is hereby **DENIED IN PART** and **GRANTED IN PART** .

Page 17 of 19

Case 1:02-cv-00302-DRH    Filed 12/06/05    Page 17 of 19    Document 137

## IV. CONCLUSION

The Court hereby finds and orders the following:

A. Defendant's Motion to Strike the November 21, 2005 Addendum to Plaintiffs' Expert Report (Doc. 134) is hereby **GRANTED**. Plaintiffs are barred from introducing as evidence in this case Dickens' Supplemental Report, dated November 16, 2005, and previously submitted as Exhibit D to Plaintiffs' Response in Opposition to Defendant's Motions *In Limine* (Doc. 131), and the evidence contained therein.

B. Defendant's Motions *In Limine* (Doc. 124) are hereby **GRANTED IN PART, DENIED IN PART, FOUND MOOT IN PART AND DEFERRED RULING IN PART**. In its Motions, Defendant has moved for seven separate orders seeking to bar various evidence offered by Plaintiffs. The finding for each of these requests based on Defendant's seven arguments, is specifically listed below:

   1. Defendant's Motion *In Limine* to bar Dickens from testifying that the 1996 Explosion would have occurred had the discharge slide gate been closed is hereby **DENIED**. Dickens may not affirmatively state that such an occurrence *would* have happened. He may only testify, based on his expert opinion and given hypothetical conditions, about whether this explosion *could* have happened.

   2. Defendant's Motion *In Limine* to bar Dickens from testifying about "alternative designs" for the sludge dryer is hereby **DENIED IN PART AND DEFERRED RULING IN PART**. The first "strategy/alternative design" proposed by Dickens, which is "Avoidance of Explosive Atmospheres" was previously found by Judge Stadtmueller to be commonly accepted in the industry and reliable, so therefore Defendant's Motion *In Limine* regarding this first "strategy/alternative design" is hereby **DENIED**. As the Court finds that a dispute in fact exists as to the remaining five "strategies/alternative designs" proffered by Dickens, it will **DEFER RULING** until such time when Plaintiffs seek to present the evidence during trial.

3. Defendant's Motion *In Limine* to limit Dickens to the opinions expressed in his (initial) Report and his deposition is found to also present a dispute of fact. Accordingly, the Court will **DEFER RULING** until the issue arises during trial.

4. Defendant's Motion *In Limine* to bar testimony or argument that it failed to properly train MMSD dryer operators is hereby **DENIED**. The Court finds that this issue creates a question of fact more appropriate for the jury to decide upon.

5. Defendant's Motion *In Limine* to bar Michael Simmons from testifying live during trial is hereby found to be **MOOT** as Plaintiffs have previously agreed to only read Simmons' prior deposition testimony into the record during trial.

6. Defendant's Motion *In Limine* to bar Plaintiffs from presenting Simmons' deposition testimony concerning injuries allegedly caused by the 1996 Explosion is hereby **DENIED**, as the Court deems such facts are relevant to the underlying issue of this case – namely, the 1996 Explosion.

7. Defendant's Motion *In Limine* to bar Plaintiffs from presenting any evidence or referring to Simmons' injuries, his lawsuit against Defendant or subsequent settlement is hereby **DENIED IN PART** and **GRANTED IN PART**. Plaintiffs will be allowed to introduce evidence of Simmons' injuries and that he previously filed a lawsuit for said injuries against Defendant. However, Plaintiffs are hereby barred from presenting any evidence or making reference to any settlement of the lawsuit filed by Simmons.

**IT IS SO ORDERED.**

**Signed this 6th day of December, 2005.**

/s/ David RHerndon
**United States District Judge**