**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

**STATE OF WISCONSIN LOCAL**
**GOVERNMENT PROPERTY**
**INSURANCE FUND and THE**
**TRAVELERS INDEMNITY COMPANY**

      **Plaintiffs,**

**v.**

**CH2M HILL, INC., a foreign corporation,**

      **Defendant.**                      **Case No. 02-C-302-DRH**

**MEMORANDUM & ORDER**

**HERNDON, District Judge:**

## I. INTRODUCTION

Now before the Court is plaintiffs State of Wisconsin Local Government

Property Insurance Fund ("Fund") and The Travelers Indemnity Company's

("Travelers") (collectively, "Plaintiffs") Motion *In Limine* (Doc. 123), in which

Plaintiffs seek exclusion of the following thirteen evidentiary items from trial.  These

items are: (1) the testimony of defendant CH2M Hill, Inc.'s expert witness, Walter

Niessen; (2) the testimony of Defendant's expert witness, Ronald Pape; (3) the

testimony of Defendant's expert witness, Dave Flowers; (4) the testimony of

Defendant's expert witness, C. James Dahn; (5) the fact that Defendant's Operation

& Maintenance ("O&M") manual was approved by the Wisconsin Department of

Natural Resources; (6) evidence that employees of the Milwaukee Metropolitan

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 1 of 26   Document 139

Sewerage District[1] ("MMSD") were "fooling around"; (7) evidence that MMSD employees were drinking; (8) Defendant's argument that Plaintiffs' liability expert is not from the United States; (9) certain statements which Defendant may seek to attribute to deceased MMSD employee, Jim Eisbrenner; (10) opinions regarding causation of the 1996 Explosion from non-expert witnesses; (11) the testimony regarding alleged oral provisions to contracts between the D&D Facility and/or MMSD and Defendant; (12) evidence regarding any statements made or documents from Plaintiffs regarding potential settlement of this case; and (13) attempts by Defendant to place blame regarding the underlying theories of liability in this case upon any third party. (Doc. 123.)

The issues in this case surround an explosion, which occurred on February 20, 1996, (the "1996 Explosion") at the D&D Facility, located in Milwaukee, Wisconsin. (*Id*. at 2.) The 1996 Explosion caused significant physical property and expense damage to the D&D Facility in excess of $2.4 million. Plaintiffs, as insurers and reinsurers of the D&D Facility pursuant to an insurance policy held by MMSD, paid out on the policy in excess of $2.4 million. Plaintiffs later filed this subrogation action against Defendant. Because the Court[2] previously granted a motion for summary judgment filed by Defendant with respect to Plaintiffs' breach of contract

---

[1] MMSD has a facility called the Jones Island Dewatering and Drying Facility (the "D&D Facility") which is insured by plaintiff MMSD and reinsured by plaintiff Travelers.

[2] At the time, United States District Judge J. P. Stadtmueller was presiding over this case. However, it should be noted that on or about July 5, 2005, this case was reassigned to United States District Judge David R. Herndon, currently presiding.

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 2 of 26   Document 139

and product liability claims, the sole remaining claims in this case are Plaintiffs' negligence claims – specifically that Defendant negligently failed to design the D&D Facility and negligently failed to implement safeguards and remedial measures that were suggested by an outside engineering firm following a flash fire and explosion that occurred prior to the 1996 Explosion. (Doc. 117, pp. 2-3.)

A brief factual summary was previously provided in the Court's Order regarding Defendant's Motions *In Limine* and Defendant's Motion to Strike.[3] (*See* Doc. 137.) Further recounting of the facts of this case will occur throughout the opinion, if deemed necessary to demonstrate the Court's legal analysis. For the reasons stated herein, the Court hereby **GRANTS IN PART, DENIES IN PART, FINDS AS MOOT IN PART** and **DEFERS RULING IN PART** Plaintiffs' Motion *In Limine*. (Doc. 123.)

## II. ANALYSIS

1.  **Plaintiffs Move *In Limine* to Exclude the Testimony of Defendant's Expert Witness, Walter Niessen**

    **(a) Conflict**

    Plaintiffs first move *in limine* to exclude the testimony of Niessen based upon a conflict of interest theory, arguing that Niessen admits in his deposition that MMSD was a former client of his back during the 1970s. (Doc. 123, p. 7 and Exhibit 8.) Plaintiffs continue by citing to the National Society of Professional Engineers

---

[3] For a more thorough factual recitation, please refer to Case No. 02-C-302, Doc. 117, and also the parties' pretrial reports, Docs. 128 & 129.

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 3 of 26   Document 139

Code of Ethics, which disallows engineers from representing an interest adversary to a former client, without the former client's consent. (*Id.* at 8.) Further, Plaintiffs cite to ***Secura Ins. Co. v. Wisconsin Public Service Corp.*, 457 N.W.2d 549 (Wis. App. 1990)**, in support of their conflict of interest theory, that a court may disqualify an expert witness if retention of the expert would create a conflict of interest. (*Id.* at 7-8.)

Upon examination of ***Secura***, it is interesting to discover the case actually *weakens* Plaintiffs' argument, rather than supporting it. The ***Secura*** court found a potential for conflict only when there was a prior contractual relationship signifying a promise of confidentiality made by plaintiff and the expert witness who later was retained by defendant. A party who simply made inquiry as to expertise and availability of an expert cannot later claim a conflict of interest to warrant disqualification when that expert witness is later retained by the opposing party. ***Secura*, 457 N.W.2d at 551**.

In their argument, Plaintiffs fail to demonstrate that an actual contractual and/or confidential relationship existed between Plaintiffs and Niessen. The Niessen deposition pages cited by Plaintiffs (pp. 7-10) are not actually included as part of the Niessen deposition transcript attached as Exhibit 8 to Plaintiffs' Motion *In Limine*. (*See* Doc. 123, p. 7.) The fact that an apparent client relationship may have existed approximately 30 years ago between MMSD and Niessen is unavailing. Also convincing is Defendant's opposing argument of waiver – Plaintiffs had the

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 4 of 26   Document 139

opportunity to address this alleged potential conflict of interest either during expert witness disclosures or after Niessen's deposition was taken back in August, 2004. Bringing forth this argument with trial only one month away is not acceptable, especially given that this is not newly-discovered information.

**(b)    Lack of Expertise**

Next Plaintiffs argue that Niessen should be excluded because he lacks expertise on the topic of fire and explosion hazards. (Doc. 123, pp. 8-9.) Defendant counters that Niessen is, in fact, qualified as an expert in thermal processes, combustion, drying and air pollution and has previously participated in the analysis of an explosion in a sludge drying facility in efforts to minimize future risk. (Doc. 130, pp. 5-6.) Defendant also adds that Niessen will not only testify regarding the topic of fire and explosion hazards, but also regarding the standard of care for an engineering firm in designing the facility (which Plaintiffs have not objected to), and will be used to refute opinions of Plaintiffs' expert, Andrew Dickens. (*Id.*)

As Judge Stadtmueller stated in his previous Order in this case (Doc. 117, p. 9) regarding Defendant's ***Daubert***[4] motion (Doc. 78), "***Daubert***, however, does not require particular requirements for an expert witness; rather, '[a]nyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness.'" ***Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000)**.  The Court

---

[4] ***Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)**.

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 5 of 26   Document 139

believes that Niessen has a background relevant enough to the aspects of his anticipated testimony to meet the requirements of an expert witness. Plaintiffs have not proven otherwise. Further, the Court feels that a motion *in limine* is not the proper vehicle for opposing the qualifications and/or testimony of any expert witness. Instead, this objection is more properly guised in a ***Daubert*** motion. A ***Daubert*** motion, moreover, should not be brought so near the eve before trial. It should be made well in advance of trial so the Court can schedule an evidentiary hearing, if necessary, prior to the onset of the logistical minutia generated at the start of a trial – such as jury pool assemblage or full court dockets, to name a few.

**(c)** **Factual Conclusions as Expert Opinions**

Plaintiffs last argue that Niessen's testimony only reveals numerous factual conclusions not amounting to proper expert opinions. (Doc. 123, pp. 9-10.) Plaintiffs then cite several passages of Niessen's deposition testimony to support their argument that Niessen's statements are only conclusions which Defendant seeks to "back door" under the "guise of expert opinion." (*Id.* at 10.) Defendant explains that Niessen's deposition testimony cited by Plaintiffs is merely his description of the "facts" – not stated for the purpose of persuading the jury the facts are *true*, but for providing the jury with factual context as to what he *assumed* to be true in order to arrive at his expert conclusions/opinions. (Doc. 130, p. 6.)

Again, the Court finds that it agrees with Defendant. It is unclear from Plaintiffs' arguments as to how Niessen's cited deposition testimony would be classified as conclusions and not opinions. The first and second passages cited by

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 6 of 26   Document 139

Plaintiffs (Niessen Report, pp. 2-3 - *filed as* Ex. 12 of Plaintiffs' Motion *In Limine*), is clearly part of the background section of Niessen's report, and not rendered as a conclusive opinion. The latter two passages of Niessen's report cited by Plaintiffs seem to constitute a portion of his expert opinions, however, Plaintiffs' argument in this regard is, itself, rather conclusive and not supported by proper factual foundation. Plaintiffs cannot merely cite a short passage out of context with the rest of Niessen's report and then baldly assert that his statements are merely "conclusions of fact or characterizations of the evidence without foundation," without further demonstrating how this is so.

This is further reason why the Court stresses the importance for parties to file a **Daubert** motion when issues such as this arise, in time for a hearing to be conducted. If, during trial, Niessens' testimony seems outside the scope of his expertise or not supported by the proper foundation, Plaintiffs can object and move to strike his testimony. Additionally, Plaintiffs may cross-examine Niessen regarding any disagreement as to the factual premises or scientific data upon which he bases his opinions. Accordingly, Plaintiffs' Motion *In Limine* regarding the exclusion of the testimony of Walter Niessen is hereby **DENIED**.

**2.      Plaintiffs Move *In Limine* to Exclude the Testimony of Defendant's Expert Witness, Ronald Pape**

**(a)      Lack of Real Testing**

Plaintiffs move *in limine* to exclude the testimony of Defendant's expert witness, Ronald Pape, because they believe Pape only did calculations, not real life

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 7 of 26   Document 139

testing, to support his opinions. While perhaps a necessary litigation tactic, it nevertheless seems a bit disingenuous when in their response to Defendant's Motions *In Limine* regarding Plaintiffs' own expert, Plaintiffs argued that "hands-on testing is not a prerequisite to the admissibility of expert testimony in the Seventh Circuit." **Dhillon v. Crown Controls Corp., 269 F.3d 865 (7th Cir. 2001)**. (Doc. 131, p. 4.) It appears that Defendant failed to address this specific argument of Plaintiffs' (perhaps inadvertently).

Yet again, the Court believes this issue would best be addressed in a timely **Daubert** motion. As that is not the present circumstance at hand, the Court is unwilling to entertain Plaintiffs' argument, especially given that Plaintiffs have only devoted an entire two sentences, without any reference to documentary, to their argument. Further, the Court believes that it is generally accepted science that dried sludge material is susceptible to self-heating (in fact, the initial report of Plaintiffs' own expert, Andrew Dickens, affirms this on page 8) and therefore testing is not an absolute requirement as Pape appears to have the necessary prior experience with the subject matter of his testimony.

    **(b)**   **Conflict**

As with Niessen, Plaintiffs also argue that a conflict of interest arises with respect to Pape, which should operate to exclude his testimony. The conflict appers to be that Pape previously met with Plaintiffs' attorneys to discuss serving as their expert witness in this case, and then later agreed to act as Defendant's expert.

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 8 of 26   Document 139

(Doc. 123, p. 10.) Defendant counters that Pape never entered into a contractual relationship with Plaintiffs' attorneys, nor did they retain Pape in order to keep any confidences. Defendant also points out that Plaintiffs have not affirmatively stated that they disclosed any of their legal theories to Pape, or more importantly, any that regard the subject matter of his expert testimony. (Doc. 130, pp. 7-8.)

Plaintiffs are shy of meeting the requisite standard for showing a conflict of interest to warrant exclusion of Pape as an expert witness from this case, pursuant to the ***Secura*** case. If Plaintiffs had presented further evidence that Pape was privy to Plaintiffs' confidential and/or work product information, obtained while being solicited by Plaintiffs' attorneys to act as an expert witness on Plaintiffs' behalf, it may have rendered an existing conflict of interest. If such is the case, Plaintiffs can subsequently make an oral motion at trial – otherwise, Plaintiffs only create speculation that Pape possesses this sort of information. However, the Court also notes that if Pape was not contractually retained as an expert witness by Plaintiffs, any disclosure made by Plaintiffs' counsel of Plaintiffs' legal theories and/or work product to Pape would result in a waiver of privilege, thereby barring their claim of conflict. For the above stated reasons, Plaintiffs Motion *In Limine* with respect to the exclusion of Pape's testimony is hereby **DENIED**.

**3.    Plaintiffs Move *In Limine* to Exclude the Testimony of Defendant's Expert Witness, Dave Flowers**

      **(a)    Conflict**

Plaintiffs move *in limine* to exclude the testimony of another one of

Defendant's expert witnesses, Dave Flowers, as MMSD used to be one of Flowers' clients back in 1994. (Doc. 123, p. 11.) Defendant again argues waiver, laches, and failure to show a contractual or other privileged relationship establishing a conflict of interest between Flowers and MMSD. (Doc. 130, p. 9.)

Similar to Defendant's other two expert witnesses, addressed previously, Plaintiffs' conflict argument does not convince the Court of an established conflict of interest under the law to prevent Flowers' testimony. If there is a potential for bias, Plaintiffs should strive to make this apparent during Flowers' cross-examination.

### (b) Lack of Expertise

Plaintiffs claim Flowers is an explosion expert or expert in drying operations and therefore cannot opine on the cause of the explosion. (Doc. 123, p. 12.) To the contrary, Defendant explains that Flowers will not be addressing the physics of the explosion, but rather he will assume that the explosion occurred as Plaintiffs propose: that a "hot spot" was allowed to form in the dryer's discharge screw. (Doc. 130, p. 10.) Secondly, Defendant points out that Flowers is an expert in wastewater operations and maintenance, so he should properly qualify as an expert to opine how the explosion could have been avoided. (*Id*.)

Upon reviewing the arguments of the parties, Defendant has properly addressed Plaintiffs' concerns; it appears that Flowers will not be testifying in the manner Plaintiffs had described in their Motion *In Limine*. In the event that Defendant asks Flowers a question during trial that Plaintiffs believe is beyond the area of his expertise, Plaintiffs may object and the Court will assess their objection

in light of Flowers' then-given testimony. Otherwise, the Court again emphasizes the need for Plaintiffs to raise their objections to an expert's lack of expertise in a timely *Daubert* motion. As such, Plaintiffs' Motion *In Limine* with respect to the exclusion of Flowers' testimony is hereby **DENIED**.

**4.     Plaintiffs Move *In Limine* to Exclude the Testimony of Defendant's Expert Witness, C. James Dahn**

**(a)     Conflict**

The last of Defendant's expert witnesses Plaintiffs move *in limine* to exclude is C. James Dahn. (Doc. 123, pp. 12-13.) Plaintiffs again attempt to exclude Dahn based on an alleged conflict of interest, for the reason that Dahn was once hired by the District in 1986 to perform testing on Milorganite. (*Id*.) Defendant reiterates its previous arguments of waiver, laches and failure to show a legitimate basis to justify disqualification. (Doc. 130, p. 11.)

The Court finds that simply because Dahn was in a former relationship with MMSD approximately 20 years ago will not give rise to a present conflict of interest absent the showing of a recent contractual or privileged relationship with Plaintiffs and/or a disclosure of confidential information. **See Secura, 457 N.W.2d at 551**.

**(b)     Dahn's testimony that MMSD Wanted Manual Controls**

Plaintiffs also seek to exclude Dahn from testifying that at a 1995 meeting, MMSD staff rejected the recommendation that the discharge slide gate at issue in this case be automated, instead insisting on the continued use of manual

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 11 of 26   Document 139

controls for the gate. (Doc. 123, p. 13.) However, Plaintiffs point out that Dahn could not identify the actual MMSD personnel he claims made these statements. (*Id.*) Therefore, Plaintiffs argue that his testimony is inadmissible for lack of sufficient foundation to show reliability, but also notes its usefulness for demonstrating Dahn's bias against his MMSD as his former client. (*Id.*) Defendant counterpoints Plaintiffs' argument by proffering that Dahn's statement should be admissible as non-hearsay under **Federal Rule of Evidence 801(d)(2)(D)**,[5] as an admission of a party opponent. (Doc. 130, p. 11.)

Defendant cites to an evidence treatise, which states, "[t]he fact that the agent or servant is not identified by name is not preclusive if it is sufficiently established that the person who made the statement was an agent or servant and not an unrelated third party and that the statement concerned a matter within the scope of the unidentifiable person's agency or employment." **30B M. GRAHAM, FED. PRACTICE & PROCEDURE: EVIDENCE § 7023, p. 217, n.8 (Interim Ed. 2000)**. Further, Defendant notes that relevant meeting minutes demonstrate there were a number of MMSD personnel present at the meeting that Dahn testifies this statement was made during, and Plaintiffs are free to call upon one of these MMSD employees to challenge Dahn's testimony. (Doc. 130, p. 11.)

Even though this testimony may possibly be construed as non-hearsay

_____

[5] In its Response, Defendant mistakenly cites this as "F.R.E. 801(b)(2)(D)."

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 12 of 26   Document 139

under **Federal Rule of Evidence 801(d)(2)(D)**,[6] because the person who is potentially the "agent or servant" of MMSD, as stated in Dahn's testimony at issue, cannot be identified, the Court deems this testimony inadmissible. Defendant is unable to sufficiently establish that the person making the statement was, in fact, an agent or servant in a position to bind MMSD, so that this alleged admission was made against Plaintiffs' interest and therefore, considered non-hearsay under **Rule 801(d)(2)(D)**.

The Court therefore **DENIES IN PART** and **GRANTS IN PART** Plaintiffs' Motion *In Limine* with respect to the exclusion of Dahn's testimony. Plaintiffs' request that Dahn be excluded as an expert witness from this case based upon a conflict of interest theory is hereby **DENIED**. However, the Court **GRANTS** Plaintiffs' request that Dahn be barred from testifying that MMSD personnel told him that they would only apply manual controls for the discharge slide gate, based upon the fact that Dahn cannot testify as to the identity of the MMSD personnel in order to

---

[6] **Federal Rule of Evidence 801** reads, in pertinent part:

    **(d) Statements which are not hearsay.** A statement is not hearsay if–

        **(2) Admission by party-opponent.** The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or **(D)** a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 13 of 26   Document 139

sufficiently establish proper agency.

**5.    Plaintiffs Move *In Limine* to Exclude Testimony that Defendant's Operation and Maintenance Manual was Approved by the Wisconsin Deptartment of Natural Resources**

Plaintiffs argue that one or more of Defendant's experts may testify that approval of the Operation and Maintenance ("O&M") manual by the Wisconsin Department of Natural Resources is relevant. (Doc. 123, p. 13.) However, Plaintiffs point out that even Defendant's expert, Dave Flowers, did not purport to know if there was any review of the O&M manual with regard to fire and explosions – thus Plaintiffs contend such testimony would only serve to speculate that this approval tends to prove that Defendant was not negligent. Therefore, Plaintiffs move *in limine* to bar Defendant from introducing this particular subject matter of testimony during trial. (*Id.*)

Defendant counters that grants from the United States Environmental Protection Agency helped fund the D&D Facility and that one requirement for the grant was to prepare an O&M manual. (Doc. 130, p. 12.) Plaintiffs' expert believes that there are inadequacies in the manual. (*Id.*) If Plaintiffs are allowed to pursue this claim, Defendant argues that it should then be allowed to show that the O&M manual was approved by the governmental agency. (*Id.*)

The Court believes that the approval of the O&M manual at issue is relevant to the issues in this case, but will be able to more properly assess it within a totality of the evidence context. Therefore, the Court hereby **DEFERS RULING** on

Plaintiffs' Motion *In Limine* with respect to testimony/evidence regarding the approval of the O&M manual until such time that this issue arises during trial.

**6. Plaintiffs Move *In Limine* to Exclude Evidence that MMSD Employees Were "Fooling Around"**

Plaintiffs move *in limine* to exclude evidence that MMSD operators or other MMSD employees were "fooling around." (Doc. 123, p. 13.) Specifically, Plaintiffs contend that Walter Niessen (one of Defendant's expert witnesses) should not be able to consider this information in rendering his expert opinions as to causation of the 1996 Explosion, when no witnesses have been able to affirmatively state who these alleged MMSD employees were or exactly what they were doing. (*Id.*)

Defendant contends that evidence of a garbled radio transmission was described in a written statement submitted by Donald Kutz, an MMSD shift supervisor. (Doc. 130, pp. 12-13.) In Kutz's statement, he reported that during the afternoon shift the day of the 1996 Explosion, this radio transmission communicated that certain MMSD employees were "fooling around." (*Id.*) Defendant urges that this evidence, while possibly detrimental to Plaintiffs, is highly probative to demonstrate contributory negligence on the part of the D&D Facility, which is a viable affirmative defense. (*Id.*) Further, Defendant explains that this evidence creates an inference that employees were inattentive and their distraction may have led to a failure to close the discharge gate, thus resulting in the hot spot causing the 1996 Explosion. (*Id.*) Defendant contends this evidence originates from MMSD itself, through its employee, Kutz. (*Id.*) Secondly, Defendant argues that Plaintiffs know the identity

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 15 of 26   Document 139

of the MMSD employees and therefore are able to present their own rebuttal evidence about this matter. (*Id.*)

The Court finds this evidence to be relevant and admissible, as long as it remains within the context of the time and location of the 1996 Explosion and can demonstrate that the MMSD employees allegedly "fooling around" were within the circle of responsibility of the D&D Facility area integral to the 1996 Explosion. Accordingly, Plaintiffs Motion *In Limine* with respect to evidence that MMSD employees were "fooling around" is hereby **DENIED**.

**7.    Plaintiffs Move *In Limine* to Exclude Evidence that MMSD Employees Were Drinking Alcohol During or Prior to Coming to Work the Day of the 1996 Explosion**

Plaintiffs move *in limine* to exclude references that MMSD employees were drinking alcohol either while working at the D&D Facility or prior to arriving at work the day of the 1996 Explosion. (Doc. 123, p. 14.) Plaintiffs contend Defendants have shown no credible evidence to substantiate these claims and further, there is no evidence that MMSD employee intoxication was the proximate cause of the 1996 Explosion. (*Id.*)

Defendant states it is aware of one MMSD employee that has a drinking problem. (Doc. 130, p. 14.) However, Defendant does not intend to introduce this evidence at trial unless it uncovers additional evidence prior to trial, to demonstrate that MMSD employee conduct was compromised on the day of the 1996 Explosion due to intoxication. (*Id.*) If such occurrence arises, Defendant promises to inform

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 16 of 26   Document 139

the Court in advance of any inquiry it intends to make during trial regarding MMSD employees drinking on the job, at which time the Court can make the appropriate ruling.

The Court accepts Defendant's representation and proffered solution to this issue. As such, Plaintiffs' Motion *In Limine* with respect to exclusion of any testimony/evidence regarding MMSD employees drinking on the job is hereby **DENIED**.

**8.    Plaintiffs Move *In Limine* to Exclude Evidence that Their Expert Witness, Andrew Dickens, is not From the United States**

Plaintiffs move *in limine* to exclude any argument or reference that their expert witness, Andrew Dickens, is from Great Britain - not the United States, and is not licensed in the State of Wisconsin, based upon their argument that this information is irrelevant to the issues in this case. (Doc. 123, p. 14.) Defendant contends that this information is relevant. (Doc. 130, p. 14.) Defendant notes that the fact that the Court previously found Dickens qualified to testify as an expert witness should not be grounds to preclude Defendant from questioning him regarding his credentials and experience at trial. (*Id*. at 14-15.)

Educational background, subject matter of work and experience of an expert witness are all relevant matters which the opposing party has every right to explore during the expert's cross-examination. Accordingly, Plaintiffs Motion *In Limine* with respect to exclusion of testimony/evidence regarding the fact that Dickens is not from the United States and that he is not licensed in the State of

Wisconsin is hereby **DENIED**.

9.  **Plaintiffs Move *In Limine* to Exclude Statements Attributed to Jim Eisbrenner**

Plaintiffs move *in limine*, seeking to exclude any testimony from Defendant's witnesses that attempt to attribute statements to deceased MMSD employee, Jim Eisbrenner, that MMSD "blue collar workers" helped to design the facility or for other purposes.  (Doc. 123, p. 15.)  Plaintiffs make this argument based upon the Wisconsin Dead Man's Statute.[7]  **Wis. Stat. § 885.16**.  Defendant first argues that the Dead Man's Statute cannot be invoked by an insurance company seeking to prevent the admission of testimony by a deceased employee of the insured's, citing to ***Knutson v. Mueller*, 228 N.W.2d 342 (Wis. App. 1975)**, in support.  Defendant further cites ***Knutson*** and ***Havlicek/Fleisher Enterprises, Inc. v. Bridgeman*, 788 F. Supp. 389 (E.D. Wis. 1992)**, that the Statute is intended to prevent a party from calling an interested witness to testify regarding communications with deceased *only if* the opposing party's liability is sustained

---

[7] **885.16. Transactions with deceased or insane persons**
No party or person in the party's or person's own behalf or interest, and no person from, through or under whom a party derives the party's interest or title, shall be examined as a witness in respect to any transaction or communication by the party or person personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his or her title or sustains his or her liability to the cause of action from, through or under such deceased or insane person, or in any action or proceeding in which such insane person is a party prosecuting or defending by guardian, unless such opposite party shall first, in his or her own behalf, introduce testimony of himself or herself or some other person concerning such transaction or communication, and then only in respect to such transaction or communication of which testimony is so given or in respect to matters to which such testimony relates. And no stockholder, officer or trustee of a corporation in its behalf or interest, and no stockholder, officer or trustee of a corporation from, through or under whom a party derives the party's interest or title, shall be so examined, except as aforesaid.

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 18 of 26   Document 139

"from, through or under" the deceased person. (*Id.*)

Eisbrenner does not appear to fit into the category the Statute seeks to protect, as Plaintiffs do not sustain liability from, through or under Eisbrenner in this case. Defendant also argues that the Statute applies only to the testimony of witnesses who have a "present, certain and vested interest" in the outcome of the litigation, such as a "director, officer or shareholder of the corporation," citing to *Havlicek/Fleisher Enterprises*, 788 F. Supp. at 397 and *American Casualty Ins. Co. v. M.S.L Industries, Inc.*, 406 F.2d 1219, 1221 (7th Cir. 1969).

The Court finds this testimony is relevant to the issues in this case. Additionally, the Court finds that Eisenbrenner does not properly fall within the protective scope of the Wisconsin's Dead Man Statute, as there is no interest of his at stake and it does not seem that Plaintiffs could possibly sustain liability for the 1996 Explosion through him.[8] While the Court is unsure as to this testimony's probative value as it relates to liability, as long as Defendant is able to show how such testimony is not hearsay, or an exception to hearsay, when introducing such testimony during trial, the Court determines such evidence shall be admissible. As such, Plaintiffs' Motion *In Limine* with respect to the exclusion of statements

---

[8] For example, in an unfair trade practices-unfair competition action brought by State against the former owner and operator of mobile home parks, State's witnesses, who were or had been tenants in mobile home parks, were not parties or persons testifying in their own interests and were not persons from, through or under whom State derived its interest or title; therefore, those witnesses were not incompetent under Dead Man's Statute to testify regarding conversations or transactions with deceased employee of former owner and operator. *State v. Fonk's Mobile Home Park and Sales, Inc.* 395 N.W.2d 786 (Wis. App. 1986), *review denied* 401 N.W.2d 10 (Wis. 1987).

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 19 of 26   Document 139

attributed to Eisbrenner is hereby **DENIED**.

**10.** **Plaintiffs Move *In Limine* to Bar Defendant from Attempting to Solicit Opinions as to the Cause of the May 1995 Explosion or 1996 Explosions from Non-Expert Witnesses**

Plaintiffs move *in limine* to bar Defendant from soliciting opinions from any non-disclosed, non-qualified witnesses regarding the cause of the May 1995 explosion or the subject 1996 Explosion occurring at the D&D Facility. (Doc. 123, p. 15.) Defendant argues that it is Plaintiffs who bear the burden of showing that Defendant was negligent in causing the 1996 Explosion and therefore, Defendant is entitled to ask any of Plaintiffs' witnesses whether that witness is asserting that he or she has personal knowledge of any act or omission on behalf of Defendant that caused the 1996 Explosion. (Doc. 130, p. 18.) Defendant explains that it is not attempting to solicit opinions as to the cause of the 1996 Explosion, but rather, is attempting "to establish the parameters of each individual fact witness' personal knowledge of disputed issues in this case [regarding any act or omission of Defendant that caused the 1996 Explosion]." (*Id.*)

The Seventh Circuit does not permit non-experts to give expert testimony. ***See, e.g., Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001)(citing Federal Rule of Evidence 702[9]).** Defendant may not attempt to solicit

---

[9] **Federal Rule of Evidence 702** states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 20 of 26   Document 139

expert testimony from lay witnesses regarding causation of the 1996 Explosion. Accordingly, the Court hereby **GRANTS** Plaintiffs' Motion *In Limine* seeking the exclusion of expert testimony from non-expert witnesses. To the extent Defendant seeks to introduce factual testimony which it feels would *not* qualify as expert testimony, but rather, regards the witness' own personal knowledge, it may make the attempt during trial and Plaintiffs may object, asking the Court for a determination of admissibility at that time.

**11.   Plaintiffs Move *In Limine* to Exclude Testimony Regarding Any Alleged Oral Contract Provisions**

Plaintiffs move *in limine* to exclude testimony and/or other evidence of alleged oral provisions or amendments to the contracts existing between Defendant and the D&D Facility. (Doc. 123, p. 16.) Defendant contends that Plaintiffs' vague argument fails to specify any of these alleged oral provisions and therefore, Defendant cannot even determine what evidence Plaintiffs seek to exclude. (Doc. 130, p. 19.) Further, Defendant points out that paragraph four in affidavit of John M. Jankowski, an MMSD engineer (attached as Ex. 1 to Plaintiffs' Motion *In Limine*), states that MMSD "would on occasion give oral direction to CH2 (Defendant) to perform some particular work." This statement contradicts Plaintiffs' request for exclusion.

Based upon this contradicting evidence, the Court finds such evidence relevant and therefore Plaintiffs' Motion *In Limine* regarding exclusion of testimony of oral provisions to any contracts between the D&D Facility and/or MMSD and

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 21 of 26   Document 139

Defendant is hereby **DENIED**.

## 12. Plaintiffs Move *In Limine* to Exclude Evidence of Previously Communicated Settlement Demands

Plaintiffs move *in limine* to exclude any of their previously communicated statements, whether oral or communicated in a document, regarding a willingness to settle the instant lawsuit for an amount less than the full value of their claim. (Doc. 123, p. 16.) Defendant agrees in its Response that there should be no reference at trial to any settlement proposal from either side. (Doc. 130, p. 19.) As such, the Court finds that Plaintiffs' Motion *In Limine* regarding exclusion of settlement demand is hereby **MOOT**, per prior agreement by Defendant to Plaintiffs' exclusion request.

## 13. Plaintiffs Move *In Limine* to Exclude Any Attempt by Defendant During Trial to Place Blame for the 1996 Explosion On a Third Party

Plaintiffs move *in limine* to exclude any references, whether direct or implied, that a third party which was not a consultant or sub-consultant to Defendant caused the 1996 Explosion. (Doc. 123, p. 16.) Plaintiffs contend this inference would be wholly unsupported by the evidence and/or any expert testimony. (*Id*.) Defendant counters that this one-sentence argument advanced by Plaintiffs is so vague that it is nearly impossible to respond to properly. (Doc. 130, p. 19.) Defendant states two observations: (1) to the extent that MMSD employees were negligent in their responsibilities at the D&D Facility, Plaintiffs bear the responsibility for that negligence and Defendant is entitled to proceed with argument

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 22 of 26   Document 139

or evidence consistent with such evidence; and (2) Defendant had those specific duties outlined in relevant task orders. (*Id.*) Defendant states it does not bear responsibility for every conceivable problem at the facility and should not therefore bear the responsibility for every conceivable problem occurring within the D&D Facility. (*Id.*)

Defendant further argues that under Wisconsin law, it is proper to include on a verdict form questions relating to the negligence of non-parties as long as there is evidence warranting the submission of the question to the jury, citing in support to ***Zintek v. Perchik*, 471 N.W.2d 522 (Wis. App. 1991)**. In sum, Defendant reasons that to the extent that any third party's negligent act or omission caused or contributed to the events is not Defendant's responsibility, and it should therefore be permitted to question witnesses and argue its case consistent with such evidence.

The Court agrees with Defendant's argument. Evidence of third-party responsibility for causation of the 1996 Explosion, provided it is well-founded evidence, is relevant to the issues in this case, and also necessary to Defendant as part of its defense. If such evidence is unsupported, Plaintiffs are free to object during trial and the Court can assess its admissibility at that time. Accordingly, Plaintiffs Motion *In Limine* regarding the exclusion of evidence of third party fault is hereby **DENIED**.

## III.  **CONCLUSION**

The Court hereby finds and orders the following as to the following thirteen subparts of Plaintiffs' Motion *In Limine* (Doc. 123):

1.  The Court hereby **DENIES** Plaintiffs' Motion *In Limine* regarding exclusion of testimony from Walter Niessen.

2.  The Court hereby **DENIES** Plaintiffs' Motion *In Limine* regarding exclusion of testimony from Ronald Pape.

3.  The Court hereby **DENIES** Plaintiffs' Motion *In Limine* regarding exclusion of testimony from Dave Flowers.

4.  The Court hereby **DENIES IN PART** and **GRANTS IN PART** Plaintiffs' Motion *In Limine* regarding exclusion of testimony from  C. James Dahn.  The Court **DENIES** Plaintiffs' request to exclude the testimony of Dahn based on an alleged conflict of interest.  However, the Court **GRANTS** Plaintiffs' request to bar Dahn from testifying that MMSD personnel stated that the D&D Facility would only use manual controls, of anything to that similar nature, based upon the fact that Dahn cannot identify which alleged MMSD personnel made these statements.

5.  The Court hereby **DEFERS RULING** on Plaintiffs' request to exclude testimony or evidence regarding approval of the O&M manual by the Wisconsin Department of Natural Resources.  The Court shall address and determine this issue should it arise during trial, and provided Plaintiffs restate their objection to the admissibility of such evidence.

6.  The Court hereby **DENIES** Plaintiffs' request to exclude evidence that MMSD employees were "fooling around."    However,

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 24 of 26   Document 139

Defendant must provide the proper evidentiary foundation for this evidence, as explained previously within this Order, in order to be properly admissible.

7. The Court hereby **DENIES** Plaintiffs' request to exclude evidence that MMSD employees were drinking alcohol during or prior to coming to work the day of the 1996 Explosion, given Defendant's proffered solution to Plaintiffs' concern, as discussed previously within this Order.

8. The Court hereby **DENIES** Plaintiffs' request to exclude evidence or questioning regarding the fact that their expert witness, Andrew Dickens, is not from the United States and also not licensed in the State of Wisconsin.

9. The Court hereby **DENIES** Plaintiffs' request to exclude evidence and/or testimony regarding statements attributed to deceased MMSD employee, Jim Eisbrenner. However, Plaintiffs have the right during trial to object to such testimony/evidence as being hearsay.

10. The Court hereby **GRANTS** Plaintiffs' request to bar Defendant from attempting to solicit expert opinions from non-expert witnesses. Defendant may only attempt to question non-expert witnesses based upon their personal knowledge. If such line of questioning appears to be outside the scope of proper testimony, Plaintiffs may at that time object during trial.

11. The Court hereby **DENIES** Plaintiffs' request to exclude testimony or other evidence regarding any alleged oral contract provisions existing between Defendant and MMSD (or the D&D Facility). However, Plaintiffs can always object during trial to such evidence due to legal arguments such as the parol evidence

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 25 of 26   Document 139

rule or if the contract(s) contained a merger clause, etc.

12. The Court hereby finds as **MOOT** Plaintiffs' request to exclude evidence of their previously communicated settlement demands regarding this lawsuit, as Defendant has agreed that there should be no reference during trial to any settlement proposal made by either party. Accordingly, the parties shall adhere to this notion and refrain from introducing any testimony or other evidence indicating any settlement demands, proposals, or other related communications regarding settlement of this lawsuit.

13. The Court hereby **DENIES** Plaintiffs' request to exclude any attempt by Defendant during trial to shift blame for the 1996 Explosion to a third party. If the testimony or other evidence Defendant seeks to introduce at trial of this nature seems unfounded, Plaintiffs can object at that time.

**IT IS SO ORDERED.**

**Signed this 8th day of December, 2005.**

**/s/     David RHerndon**

**United States District Judge**

Case 1:02-cv-00302-DRH   Filed 12/08/05   Page 26 of 26   Document 139