IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

STATE OF WISCONSIN LOCAL
GOVERNMENT PROPERTY
INSURANCE FUND and THE
TRAVELERS INDEMNITY COMPANY

    Plaintiffs,

v.

CH2M HILL, INC., a foreign corporation,

    Defendant.                               Case No. 02-C-302-DRH

**MEMORANDUM & ORDER**

**HERNDON, District Judge:**

**I. INTRODUCTION & BACKGROUND**

Now before the Court is plaintiffs State of Wisconsin Local Government Property Insurance Fund ("Fund") and The Travelers Indemnity Company's ("Travelers") (collectively, "Plaintiffs") Motion for New Trial, made pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 59(a)** and their supporting memorandum. (Docs. 156 & 157.) Plaintiffs filed the instant motion ten days after judgment was entered in this matter. This case went to trial on December 12, 2005 and ended on December 19, 2005. The jury found defendant CH2M Hill, Inc. ("CH2M") not liable for the February 20, 1996 explosion at the D&D Facility (hereinafter, the "Incident")

and that the Milwaukee Metropolitan Sewerage District ("MMSD")[1] was instead 100% at fault for the Incident. Further, the jury found that Plaintiffs could be reasonably compensated for their losses stemming from the Incident in the following amounts: (1) property damage - $152,936 and (2) waste disposal - $1,379,000. (*See* Doc. 150, Special Verdict Question No. 6.) For the following reasons stated herein, the Court denies Plaintiffs' motion.

## II. ANALYSIS

### 1. LEGAL STANDARD

"In ruling on a motion for new trial [made pursuant to Rule 59(a)], federal law requires a district court to determine 'whether the verdict is against the weight of the evidence . . . the damages are excessive, or . . . for other reasons, the trial was not fair to the party moving.'" **Kapelanski v. Johnson, 390 F.3d 525, 530 (7th Cir. 2004)(quoting *EEOC v. Century Broadcasting Corp.*, 957 F.2d 1446, 1460 (7th Cir.1992)(internal citation omitted))**. A verdict determined to be "against the weight of the evidence" should only warrant a new trial "when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." ***Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995)(citing *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991))**. Further, because a district court's decision to grant or deny a new trial is accorded great deference, a reviewing

---

[1] MMSD operates the D&D Facility. Plaintiffs insured the D&D Facility on behalf of MMSD at the time of the Incident.

court should reverse the decision only subject to a finding of "exceptional circumstances showing a clear abuse of discretion." ***General Foam Fabricators, Inc. v. Tenneco Chems., Inc.*, 695 F.2d 281, 288 (7th Cir.1982)(quoting *Stinebower v. Scala*, 331 F.2d 366, 367 (7th Cir.1964))**. In other words, " 'the proper inquiry is not how the reviewing court would have ruled if it had been considering the case in the first place, but rather whether any reasonable person could agree with the district court.' " ***Kapelanski*, 390 F.3d at 530 (quoting *EEOC*, 957 F.2d at 1460)**.

**2.    PLAINTIFFS' ASSERTED GROUNDS FOR WARRANTING A NEW TRIAL**

Plaintiffs move for a new trial on the grounds that the evidence presented at trial did not support the jury's verdict which found CH2M not liable for the Incident. (Doc. 156.) In their supporting memorandum, Plaintiffs list the following five reasons why they believe the verdict did not conform to the evidence:

(1)    the evidence established that CH2M was responsible for the Incident because of its negligent design of the dryer discharge hood which allowed dried sludge to accumulate and self-heat during add back;

(2)    the evidence showed CH2M was negligent in its failure to perform an explosion safety hazard audit which would have disclosed the danger;

(3)    the evidence established CH2M was negligent in its failure to

>                    assist in establishing standard operating procedures for the
>                    dryers;
>
>              (4)   the evidence established CH2M was negligent in its failure to
>                    properly train the dryer operators and warn them about the
>                    dangers of operating the dryers in add-back mode; and
>
>              (5)   the evidence did not support a damages finding of $1,379,000 for
>                    Plaintiffs' waste disposal expenses arising from the Incident.[2]

(*See* Doc. 157.) The evidence Plaintiffs claim support their above assertions include both parties' multiple fact witnesses, trial exhibits (*see* Doc. 155) and Plaintiff's own expert witness, Andrew Dickens. In short, Plaintiffs argue that because the jury finding that MMSD was <u>100%</u> at fault for the Incident is so clearly against the weight of evidence, a new trial should be granted.

## C. DETERMINING WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE

CH2M opposes Plaintiffs' request for a new trial, noting that Plaintiffs had the burden of proof to show that CH2M was negligent, they did not meet this burden, and therefore, the verdict finding CH2M *not* liable was supported by the weight of the evidence. (Doc. 165.) Plaintiffs filed a Reply, further arguing that CH2M mischaracterized and distorted the evidence presented during trial.

---

[2] Plaintiffs' damages technically stem from the amount they reimbursed MMSD for its insurance claim made due to the Incident.

Considering the grounds Plaintiffs assert warrant a new trial, the Court will now analyze each separate ground, addressing the parties' respective arguments thereto, to determine whether the verdict was against the weight of the evidence in order to justify granting a new trial.

### 1. Design of the Dryer Discharge Hood

As previously stated, Plaintiffs assert in their instant motion that the evidence at trial showed CH2M was primarily responsible for the Incident due to several difference instances of negligence – the first being the negligent design of the dryer discharge hood, which Plaintiffs claim allowed dried sludge to accumulate and self-heat during the add back process. (Doc. 157, p. 2.) CH2M counter-argues that Plaintiffs failed to prove during trial that CH2M was negligent in designing the dryer discharge hood. In its defense, CH2M points out that Plaintiffs' own expert witness, Andrew Dickens, was not himself familiar with the relevant engineering standards used back in the 1980s in the United States when CH2M designed the D&D Facility. Further, CH2M notes that Dickens could not suggest a feasible alternate design that would have proven to be safer than the design chosen by CH2M, especially when taking into account all the economic considerations existing at the time the design was established. (Doc. 168, pp. 2-3.)

In contrast, CH2M claims it presented adequate contradictory evidence to warrant the jury verdict – evidence which demonstrated the fact that MMSD was already familiar with the dryer discharge hood design from its previous facility, and that it did not wish to consider safety implementations suggested by CH2M at the

time the D&D Facility was constructed. Additionally, CH2M states that it presented the expert testimony of Walter Niessen to establish that it met the standard of care required in its work. In fact, CH2M notes that one of Plaintiffs' own witnesses, MMSD's former superintendent, Frank Munsey, testified that no design is 100% safe and that CH2M's dryer design was appropriate for its era. (*Id.*)

Plaintiffs, in their Reply, rebut CH2M's arguments, stating that CH2M had sole design responsibility for the design of the dryer discharge hood. Therefore, as it is undisputed that the configuration of the hood permitted Milorganite to pile up and combust, thereby causing the Incident, Plaintiffs assert that CH2M was alone responsible – not MMSD. (Doc. 168, p. 2.) Plaintiffs substantiate their assertion by noting that a design drawing for a component of the dryer discharge hood, made by CH2M employee, Charlie Shotts, was the same design that Plantiffs' expert, Dickens, testified *should have* been implemented. Plaintiffs claim this Shotts' alternate design was feasible and "inherently safe." Because the pre-design narrative (Plaintiffs' Trial Ex. 84) imposed a duty upon CH2M not to design a discharge dryer hood that would allow combustible materials to accumulate, Plaintiffs believe they met their burden in proving CH2M was negligent in designing and implementing the dryer discharge hood that was in operation at the time of the Incident. (*Id* at 3.)

Reviewing the parties' arguments and the evidence presented at trial, the Court does not believe Plaintiffs' arguments regarding the design of the dryer discharge hood meet the standard to warrant a new trial under Rule 59(a). The verdict finding CH2M was not liable for the Incident is not against the weight of the

evidence here. Although Plaintiffs presented evidence showing other alternate designs existed that could have been implemented, it is reasonable to believe that to the jury, in considering the totality of the evidence presented by the parties, found it more convincing that CH2M met the requisite standard of care in designing the D&D Facility and dryer discharge hood. It is entirely possible that the jury felt CH2M's witnesses were more believable. Perhaps the jury believed that at the time the D&D Facility was constructed, CH2M implemented a design for the dryer discharge hood it felt was safe, economically feasible, and most importantly, one that met MMSD's final approval. Unfortunately, the Court is unable to know for certain exactly *what* the jury thought. However, favorable evidence exists to find that the verdict does not "shock the conscience," and that it was a decision that a reasonable person could reach after careful deliberation.

### 2. Explosion Hazard Safety Audit

Plaintiffs contend that the evidence at trial showed CH2M was also negligent for failing to perform an explosion hazard safety audit (the "Audit") which would have disclosed the danger of the accumulation of materials in the dryer discharge hood, which led to the Incident. (Doc. 157, p. 2.) In its opposing Response, CH2M argues that Plaintiffs' assertion is based solely on the testimony of its expert, Andrew Dickens. (Doc. 165, p. 4.) However, CH2M states that Dickens lacked the ability to testify that the Audit was a necessary requirement in meeting the appropriate standard of care in the United States back in the 1980s. Even had Dickens been able to testify that the Audit was such a requirement, CH2M contends

that it presented evidence to allow the jury to conclude that an Audit was conducted. CH2M asserts that at its own expense, it hired the outside safety engineering firm, Southwest Research Institute ("SRI"), to apparently conduct some type of inspection or audit. SRI issued a final report which, CH2M states, "warmly endorsed [CH2M's] efforts to address safety issues." CH2M also states that testimony of Jim Smith, a CH2M employee, showed an Audit was essentially performed after receipt of SRI's report. (*Id.*)

Replying, Plaintiffs argue that although their expert, Dickens, was not personally practicing as an engineer in the United States in the 1980s, he formed the basis for his opinion by deriving information from NFPA[3] standards in effect at the time CH2M did its original design work. (Doc. 168, p. 2.) Therefore, Plaintiffs believe his testimony was credible. Plaintiffs also questioned whether CH2M actually conducted the Audit after receiving the SRI report, as they were not aware of any documents supporting Smith's testimony. (*Id.*)

Although Plaintiffs' arguments offer that their expert, Dickens, relied on information derived from industry standards, this only lends credence to his opinions. It does not render them absolute, nor does it evidence that Dickens' opinions were more believable to the jury than the evidence presented by CH2M regarding the circumstances surrounding the Audit. The Court finds that in this instance, a reasonable person sitting on the jury could have interpreted the evidence

---

[3] National Fire & Protection Agency; specifically Dickens referenced NFPA 654, originally adopted in 1945, NFPA 69, originally adopted in 1977, and NFPA 68 originally adopted in 1945.

to conclude that CH2M met its standard of care and adequately conducted an explosion hazard safety audit. The jury's finding as such does not "shock the conscience," as there was evidence presented by CH2M to warrant it – Plaintiffs were unsuccessful in attempting to convince the jury otherwise. That in itself is not reason enough to find the verdict against the weight of evidence in order to grant a new trial.

### 3. Standard Operating Procedures

Plaintiffs also assert that the evidence at trial also established that CH2M acted negligently in its failure to assist in the preparation of standard operating procedures ("SOPs") for the facility dryers. (Doc. 157, p. 2.) Therefore, Plaintiffs feel that the verdict finding CH2M not liable and MMSD 100% at fault for the Incident warrants granting of a new trial. CH2M, in response, contends that the language of Task Order 282 clearly stated that MMSD had primary responsibility for the preparation of the SOPs. (Doc. 165, p. 5.) Further, CH2M states that an MMSD dryer operator by the name of Mike Wegner put together the initial SOP and submitted it to a CH2M employee, Hiran de Mel. Subsequently, de Mel made some modifications, wrote "DRAFT!" on Wegner's document and sent it back to him. CH2M reasons that the jury could have concluded that de Mel was essentially telling Wegner "to go back to the drawing board." (*Id.*) CH2M also contends the evidence showed MMSD employees never moved forward with the revision of Wegner's dryer SOP, even though after the Incident, MMSD employee, Frank Munsey, acknowledged that MMSD was able to prepare the relevant SOPs in less than a month. (*Id.*)

Page 9 of 16

Case 1:02-cv-00302-DRH   Filed 02/14/06   Page 9 of 16   Document 176

To reply, Plaintiffs argue that the jury ignored the fact that CH2M had a duty to assist MMSD with the development of SOPs. Therefore, it was de Mel's duty, as an employee of CH2M, to review and revise/correct the proposed dryer SOP drafted by Wegner. (Doc. 168, p. 4.) CH2M failed at trial to explain *why* it never revised Wegner's SOP to ensure operators knew how to safely and properly shut-down the dryer in order to prevent or avoid certain dire situations, such as the Incident. (*Id.*)

Reviewing the evidence that was placed before the jury, as recounted within the parties' respective post-trial briefs, the Court finds that a reasonable juror could have concluded that CH2M met its duty regarding the SOPs. It seems as though a juror could have found that de Mel *did* revise/correct the Wegner draft SOP, but that MMSD personnel failed to take further effort to develop this SOP into a final version. As such, the MMSD operators apparently followed a draft version of the SOP – even though MMSD was aware (or should have been aware) that it still existed in draft form. As stated by both parties, CH2M had a duty to *assist* MMSD with the development of its SOPs. This is different from a duty requiring CH2M to develop the SOPs on its own. The jury could have interpreted the evidence to conclude that prior to the Incident, the ball was still in MMSD's court to revise the dryer SOP, and that CH2M was merely waiting for a response. Whatever the specific reasons may have been, the Court finds that the weight of the evidence could logically support the verdict reached in this case. Therefore, a new trial based upon a failure to find CH2M liable for negligence in developing SOPs is not warranted.

### 4. Training of the Dryer Operators

Plaintiffs also assert that because evidence at trial showed CH2M was negligent in its failure to properly train the dryer operators, the verdict finding CH2M not liable and MMSD was instead 100% at fault for the Incident favors a new trial. (Doc. 157, p.2.) Specifically, Plaintiffs believe CH2M had a duty to properly train the dryer operators, and that this responsibility included a duty to warn the operators about the dangers associated with running the dryers in add back mode. (*Id*.) Presumably then, Plaintiffs assert that had the dryer operators received proper training, the Incident may have been prevented.

In its opposing response, CH2M states that it presented testimony from Dave Flowers, an expert in training, to show CH2M adequately met its duty to train MMSD dryer operators. (Doc. 165, p. 6.) Further, CH2M notes that Flowers' opinion testimony was substantiated by documentary evidence, such as various training manuals, which set forth CH2M's limited training objectives. (*Id*.) CH2M proffers that the jury "could have concluded [CH2M] taught the trainers the five stated objectives and that MMSD's task was to take training of the operators the rest of the way to the overall goal of operating the system." (*Id*.) More importantly, CH2M points out that Plaintiffs failed to present evidence to show what training the dryer operators did *not* receive, in order to more effectively criticize CH2M's training methods (or lack thereof). (*Id*.)

Specifically addressing Plaintiffs' argument that CH2M failed to warn MMSD dryer operators of the dangers associated with running a dryer in add back

mode, CH2M contends that knowledge of such dangers was "common" within the industry. (*Id*.) CH2M also emphasizes the glaring fact that Plaintiffs do not contest the jury finding that MMSD *was* negligent in regards to the Incident, and that evidence during trial questioned whether MMSD operators were even following proper standard procedure at the time of the Incident. (*Id*. at 7.) As such, CH2M asserts that the jury's verdict was "wholly justified." (*Id*. at 8.)

Plaintiffs, in their Reply, argue that nothing in the training manuals prepared by CH2M mentioned the risk of explosion, the risk of self-heating material while operating in add back mode or directed the operator to close the discharge gate during add back mode. (Doc. 168, p. 4.) Further, Plaintiffs justify the actions taken by MMSD dryer operators the day of the Incident, arguing that the operators acted as best they knew how; any negligence thereby ultimately resulted from CH2M's failure to properly train the operators. (*Id*.)

The Court believes that although the parties could continue this back and forth finger pointing interminably, the trial was the better occasion to culminate such fact-finding, rather than via this post trial motion. Mindful of the Rule 59(a) standard, the facts before the Court now do not indicate reason to deduce that the weight of the evidence did not support the verdict in this regard. It does not shock the conscience, nor does it appear to be a miscarriage of justice that the jury did not find CH2M to be liable for the Incident. It is reasonable to believe that CH2M's evidence convinced the jury that CH2M offered the requisite amount of proper training to MMSD dryer operators, and that further training would not likely have

prevented the Incident when taking into consideration the behavior of the MMSD dryer operators on the day of the Incident. As Plaintiffs have not provided the Court with additional facts or other legal argument to show the verdict was against the weight of evidence, the Court cannot grant a new trial based upon this "training negligence" theory.

### 5. Waste Disposal Damages

The final reason Plaintiffs believe that the verdict was not supported by the weight of the evidence, centers upon the jury finding of the amount of damages for waste disposal.[4] (Doc. 157, pp. 2-3.) Plaintiffs further argue that the damages finding for Plaintiffs' waste disposal expenses arising from the Incident was based solely on an improper closing argument: CH2M's attorney stated that waste disposal damages were in the amount of $1,379,000, asked the jury to list that amount as the answer to jury question number six on the special verdict,[5] and, as a result of CH2M counsel's statement, that is exactly the jury did. Plaintiffs claim there was no evidence to support a finding in this amount. Instead, Plaintiffs argue that the uncontested testimony of William Bennett (*see* Doc. 108) showed the waste damage

---

[4] Although CH2M, in its Response, addresses the property damages determined by the jury, and Plaintiffs thereby also discuss in their Reply, because Plaintiffs did not originally raise the property damages amount as grounds for a new trial in their original motion, the Court similarly will not review it as grounds.

[5] The special verdict question number six read and was answered by the jury as follows:
  Question No. 6:
    What amount of damages will fairly and reasonably compensate the plaintiffs for the losses incurred as a result of the February 20, 1996 accident with respect to:
      (a)  property damage                $   152,936
      (b)  waste disposal                 $1,379,000

Page 13 of 16

Case 1:02-cv-00302-DRH   Filed 02/14/06   Page 13 of 16   Document 176

actually amounted to $2,298,881. Therefore, Plaintiffs believe the damages figure stated in CH2M's closing argument was improper as it was not supported by any admitted evidence, misled the jury and should warrant a new trial. (Doc. 157, pp. 2-3.)

CH2M opposes Plaintiffs' assertion that the waste disposal damages amount awarded by the jury was unsupported by the evidence and that CH2M's closing argument misled the jury. CH2M argues that Plaintiffs' witness, William Bennett, did, in fact, testify that Plaintiffs' waste disposal expenses related arising from the Incident totaled $2,298,881, but CH2M then pointed out that $920,042 (attributed to hauling charges) of these expenses was incurred at least two or months *after* the Incident.[6] (Doc. 165, p. 8.) As such, CH2M stated that it argued to the jury that Plaintiffs' requested amount should not be awarded as damages for waste disposal expenses – the jury agreed, as CH2M believes there was "a solid evidentiary foundation" for its argument. (*Id.*)

Plaintiffs argue there was no evidentiary basis for the jury to determine the amount of waste disposal damages to be $1,379,000; that CH2M's counsel simply "made it up," and thereby misled the jury. However, Plaintiffs do not offer any solid legal arguments or other evidence to show reason why it would be unreasonable for the jury *not* to conclude that waste disposal expenses occurring several months after the Incident should not included in the damages amount. The

---

[6] The amount the jury determined satisfied Plaintiffs' waste disposal damages, $1,379,000, is actually the rounded-up dollar amount of the difference between Plaintiffs' claimed total damages of $2,298,881 and the "hauling charges" expenses of $920.042.

Page 14 of 16

Case 1:02-cv-00302-DRH   Filed 02/14/06   Page 14 of 16   Document 176

Court simply does not have before it the necessary illustrative arguments supported by evidence presented at trial to show the jury's determination of waste disposal damages was so severely inadequate and unfair to Plaintiffs as to warrant a new trial. Further, Plaintiffs failed to adequately demonstrate that there was a lack of evidence presented at trial to support the jury's determination of waste disposal damages.

The instructions read by the Court to the jury at the end of the parties' closing arguments clearly stated the amount expended by Plaintiffs to reimburse MMSD for damages arising from the Incident and that the jury was to treat this as fact. (*See* Doc. 149, p. 5.) The instructions further reminded the jurors to disregard exhibits or testimony not admitted into evidence. (*Id*. at 8.) When considering damages, the Court instructed the jurors to determine the "amount of damages [that] will fairly and reasonably compensate the plaintiffs for losses incurred as a result of the [Incident] . . ." regardless of their liability determination, and not to deduct from their determined amount because of sympathy, resentment or because of a doubt as to the liability of either party. (*Id*. at 29.) Most importantly, the instructions clarified to the jurors that the lawyers' "opening statements and closing arguments *are not evidence*." (*Id*., emphasis added.)

As such, the jurors were fully informed how much Plaintiffs paid to MMSD and how to properly determine the amount of damages in this case. Therefore, the Court does not see how it can find that the jurors did not have a reasonable basis for arriving at the waste disposal damages amount as answered in Special Verdict Question No. 6, absent any substantial evidence indicating otherwise.

(Doc. 150.) Plaintiffs' request for a new trial upon the basis that the waste disposal damages were unsupported by the evidence is not warranted. The mere filing of a lawsuit does not bestow upon the plaintiff an entitlement of success. In sum, a plaintiff is only guaranteed the right to a fair trial, which, in this instance, the Court believes Plaintiffs received.

### III. CONCLUSION

The Court finds that Plaintiffs have not met the standard set forth pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 59(a)** to warrant granting a new trial in this matter. Plaintiffs fail to present adequate evidence to convince the Court that the verdict was against the weight of the evidence. Accordingly, Plaintiff's Motion for New Trial (Doc. 156) is hereby **DENIED**.

**IT IS SO ORDERED.**

Signed this 14th day of February, 2006.

/s/     David RHerndon
**United States District Judge**